ANGELO ORLO *v.* THE CONNECTICUT COMPANY ET AL.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued April 3—decided July 22, 1941.

*Isadore L. Kotler,* with whom were *Francis J. King,* and, on the brief, *James E. Murphy* for the appellant (plaintiff).

*Edwin H. Hall,* with whom, on the brief, was *J. W. Grady,* for the appellee (named defendant).

*Walton E. Cronan,* for the appellee (Town of West Haven).

MALTBIE, C. J.   The plaintiff brought this action against the named defendant and the town of West Haven to recover damages he claimed to have suffered by reason of the negligence of the named defendant and the maintenance of a nuisance by it and the defendant town.   The jury rendered a verdict for the defendants and from the judgment entered thereon the plaintiff has appealed, claiming errors in the charge.   He was a passenger in an automobile which was following a trolley car of the named defendant. Due to the claimed negligence of the operator of the trolley car, its pole came in contact with the trolley

wire and other wires, causing the former to break.
The ends of this wire were charged with electricity.
One struck the top of the automobile which as it
proceeded came in contact with the other. The driver
of the automobile stepped to the ground, received an
electric shock and was thrown to the highway; his
clothing was scorched and burned and he received
physical injuries. The plaintiff continued to sit in
the automobile, with the wires flashing, spitting and
hissing about it. He claimed to have proved that he
received sparks from the electricity, but there were no
burns or marks on his body from it. He also claimed
that he suffered nervous shock and severe fright, caus-
ing him to shake and tremble, that he was confined in
a hospital about a month, that a condition of diabetes
and arteriosclerosis from which he had previously
suffered was aggravated and that he continued to be
disabled and under medical attention until the trial,
nearly a year after the accident.

The trial court instructed the jury that there could
be no recovery of damages due to fright alone un-
accompanied by physical injury; that this meant an
injury of a traumatic nature from the application of
some outward force; that it would not include "some
perspiration of the body or some heart disturbance
or some nervous disturbance"; but that, even though
the contemporaneous physical injury was slight, there
could be a recovery for a serious mental, nervous or
other condition which resulted. The court submitted
to the jury an interrogatory asking whether the plain-
tiff received an electrical shock. After they had been
deliberating for some time and had returned to the
court room, they asked the court what would consti-
tute a physical injury if the plaintiff did not receive
an electrical shock. The trial court, in substance, re-
peated the charge it had previously given. In con-

nection with their verdict, the jury answered the interrogatory in the negative.

The plaintiff assigns error in this portion of the charge. Its gist was that in order to recover the plaintiff must prove a contemporaneous injury of a traumatic nature, though it be slight. The three cases in which we have had occasion to consider a recovery for the results of fright or nervous shock all fall within this statement. *Block* v. *Pascucci,* 111 Conn. 58, 62, 149 Atl. 210; *Israel* v. *Ulrich,* 114 Conn. 599, 601, 159 Atl. 634; *Mitnick* v. *Whalen Brothers, Inc.,* 115 Conn. 650, 651, 163 Atl. 414. The weight of authority in other jurisdictions supports a recovery in such situations. How far the courts have gone in applying the rule is illustrated by the case of *Comstock* v. *Wilson,* 257 N. Y. 231, 177 N. E. 431. The plaintiff in that case was in an automobile collision; after it was over she stepped from the automobile and started to write down the defendant's name and license number; and while doing so she fainted and fell to the sidewalk, fracturing her skull. The court, after referring to the fact that in *Mitchell* v. *Rochester Ry. Co.,* 151 N. Y. 107, 45 N. E. 354, it had been held that there could be no recovery for injuries from fright unaccompanied by physical injury and tracing the development of the law in Massachusetts and New York, sustained a judgment for the plaintiff on the ground that the collision and the consequent jar to the passengers in the car was a battery and an invasion of her legal rights and that this was sufficient to permit a recovery for her subsequent death. Had the jury in this case found, as the plaintiff claimed, that one of the wires fell upon the automobile in which the plaintiff was riding and the occurrence caused him to shake and tremble, it would be difficult if not impossible to distinguish the case before us from the *Comstock* case. Even in Massa-

chusetts, where the courts have consistently adhered to the rule that to permit a recovery there must be a contemporaneous injury of a traumatic nature, it has recently been held error to direct a verdict for a street railway company in an action where a passenger in a car, frightened when it collided with an automobile, jumped from her seat and twisted her shoulder, although there was no external mark of injury. *Freedman* v. *Eastern Massachusetts Street Ry. Co.*, 299 Mass. 246, 12 N. E. (2d) 739. To make the right to recover damages for serious injuries dependent upon such slight circumstances is a result which it would be difficult to justify to a layman of ordinary intelligence.

It may be granted that, as pointed out in some of the authorities hereafter cited, there can be no recovery for mere fright, nervous shock or other mental disturbance where there is no outward manifestation of their effects, upon the very logical ground that the law has never regarded these mental states standing alone as a legal injury. Nor are we now concerned with a situation where the party claiming to recover was not within the range of ordinary physical danger from the negligent conduct claimed. The plaintiff is seeking to recover for elements of damage which, if there had been a contemporaneous bodily injury, would be allowed as matter of course. There is great disagreement in the cases upon the question whether there can be a recovery for injuries which can be traced to the claimed negligent conduct through fright or nervous shock where there is no such injury. The decisions are gathered and reviewed in the notes 11 A. L. R. 1134, 40 A. L. R. 983, 76 A. L. R. 681, 98 A. L. R. 402, and are discussed and the underlying principles are considered in articles by very able commentators of which perhaps the most helpful are

Bohlen, Studies in the Law of Torts, 252; Throckmorton, Damages for Fright, 34 Harvard Law Review, 260; 1 Sutherland, Damages (4th Ed.) § 21 ff; and Pollock on Torts (14th Ed.) 38. Examination of the cases discloses that there has been a definite tendency toward the enlargement of the right of recovery for damages resulting from fright or nervous shock.

Some of the reasons given for denying recovery, particularly in the older cases, have little if any weight now. One is the difficulty in tracing with any certainty the resulting injury back through the fright or nervous shock to the claimed negligent conduct. The steadily increasing advance in medical knowledge has tended to minimize this difficulty. It is a commentary upon it that in this state ever since the case of *Seger* v. *Town of Barkhamsted,* 22 Conn. 290, 298, mental suffering consequent upon a physical injury has been a permissible element of damages; *Masters* v. *Warren,* 27 Conn. 293, 300; *Maisenbacker* v. *Society Concordia,* 71 Conn. 369, 377, 42 Atl. 67; *Miller* v. *Connecticut Co.,* 112 Conn. 476, 478, 152 Atl. 879; included in that mental suffering is apprehension of danger of death caused by the injury; *Bushnell* v. *Bushnell,* 103 Conn. 583, 594, 131 Atl. 432; *Welz* v. *Manzillo,* 113 Conn. 674, 678, 155 Atl. 841; and it is not easy to think of any other mental state more subjective or difficult of evaluation in terms of dollars and cents. Moreover the whole line of cases which permit a recovery for serious injuries resulting from fright or nervous shock where there has been a very slight battery or bodily injury such as the cases we have cited from our own reports, New York and Massachusetts, establish that there is no insuperable difficulty in tracing the causal connection between the injuries and the claimed negligent conduct. "No slight physical injuries in addition

to those resulting from the shock would fortify the plaintiff's claim." *Comstock* v. *Wilson, supra,* 239.

It has been held in some cases that there can be no recovery for injuries following upon fright or nervous shock because the production of such emotional disturbance is not the basis upon which negligence can be predicated. The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. *Botticelli* v. *Winters,* 125 Conn. 537, 542, 7 Atl. (2d) 443. By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? Bohlen, op. cit. 260; *Sponatski's Case,* 220 Mass. 526, 530, 108 N. E. 466. There may well be situations where it could be found as matter of fact, or in some cases as matter of law, that harm from fright was not a reasonably forseeable result of the negligence claimed. But it is equally true that in other situations it would be well within the realm of reasonable foreseeability that such harm would be likely to result from the negligence. *Mitnick* v. *Whalen Brothers, Inc.,* 115 Conn. 650, 651, 163 Atl. 414. For example, if one should negligently cause a very loud and unexpected explosion to take place close behind a crowd of people containing many women and children, it could hardly be concluded that it was not within the scope of reasonable foresight that some of them would suffer a nervous shock which would cause them serious injury. It cannot logically be contended that in all cases the risk of such injuries is one against which there is no duty to exercise care.

It is also true that it cannot be said that such injuries are necessarily too remote in the chain of causation to permit recovery. There are cases where that would be so; see *St. Martin* v. *New York, N. H. & H. R. Co.*, 89 Conn. 405, 407, 94 Atl. 279; *Kowalski* v. *New York, N. H. & H. R. Co.*, 116 Conn. 229, 235, 164 Atl. 653; and of course in default of proof of causal connection no recovery could be had; *Jones* v. *Damtoft*, 109 Conn. 350, 146 Atl. 490. See *Kinderavich* v. *Palmer*, 127 Conn. 85, 15 Atl. (2d) 83. But that in many situations the negligence might be found to have been a substantial factor in producing the results consequent upon fright or nervous shock does not admit of doubt. That the causation may be properly established by competent evidence appears from the decisions previously cited where there was a slight battery or physical injury but the substantial damage is traced back to the claimed negligent condition through intervening fright or shock.

It is, then, well within the logic of the law that where results which are regarded as proper elements of recovery as a consequence of physical injury are caused by fright or nervous shock due to negligence, recovery should be permitted. Undoubtedly one, if not the principal, reason why recovery has been denied in cases of this nature is the feeling that fright and similar emotional disturbances are subjective states of the mind, difficult properly to evaluate and of such a nature that proof by the party claiming the injury is too easy and disproof by the party sought to be charged is too difficult, to make it safe as matter of policy for the law to deal with them, and that, therefore, to permit recovery in such cases would open a wide field for fictitious claims with which the law cannot satisfactorily deal. The refusal to allow a recovery in such a case is not rested on "a logical deduction

from the general principles of liability in tort but . . . [is] a limitation of those principles upon purely practical grounds"; Holmes, C. J., in *Smith* v. *Postal Telegraph Co.*, 174 Mass. 576, 577, 55 N. E. 380; it is a matter of "administrative policy" in the particular jurisdiction. Caveat to Restatement, 2 Torts, § 436. The real basis for the requirement that there shall be a contemporaneous bodily injury or battery, is that this guarantees the reality of the damage claimed. *Homans* v. *Boston Elevated Ry. Co.*, 180 Mass. 456, 458, 62 N. E. 737. But that reality may be proved no less by injuries subsequent to the occurrence of the claimed negligent conduct. There is hardly more risk to the accomplishment of justice because of disparity in possibilities of proof in such situations than in those where mental suffering is allowed as an element of damage following a physical injury or recovery is permitted for the results of nervous shock provided there be some contemporaneous slight battery or physical injury. Certainly it is a very questionable position for a court to take, that because of the possibility of encouraging fictitious claims compensation should be denied those who have actually suffered serious injury through the negligence of another.

Our conclusion is that where it is proven that negligence proximately caused fright or shock in one who is within the range of ordinary physical danger from that negligence, and this in turn produced injuries such as would be elements of damage had a bodily injury been suffered, the injured party is entitled to recover. This position is supported by the commentators to whose writings we have referred. It is that approved in the Restatement, although with the caveat previously referred to, 2 Torts § 436. The English courts have finally come to it. Pollock, Torts (14th Ed.) 39. Among a considerable number of American cases sup-

porting such a conclusion are the following: *Chiuchiolo* v. *New England Wholesale Tailors,* 84 N. H. 329, 332, 150 Atl. 540; *Simone* v. *The Rhode Island Co.,* 28 R. I. 186, 190, 66 Atl. 202; *Hanford* v. *Omaha & C. B. Street Ry. Co.,* 113 Neb. 423, 427, 203 N. W. 643; *Frazee* v. *Western Dairy Products,* 182 Wash. 578, 582, 47 Pac. (2d) 1037; *Mack* v. *South Bound R. Co.,* 52 S. C. 323, 332, 29 S. E. 905; *Purcell* v. *St. Paul City Ry. Co.,* 48 Minn. 134, 138, 50 N. W. 1034; *Alabama Fuel & Iron Co.* v. *Baladoni,* 15 Ala. App. 316, 320, 73 So. 205, approved, *Central of Georgia Ry. Co.* v. *Kimber,* 212 Ala. 102, 103, 101 So. 827. In fact we have ourselves allowed a recovery in a workmen's compensation case, where the necessary link in the chain of causation between employment and suicide was found in a nervous breakdown caused by the conditions of the employee's work; *Wilder* v. *Russell Library Co.,* 107 Conn. 56, 60, 139 Atl. 644; and the establishment of a causal connection between employment and injury in such a case does not essentially differ from the establishment of a like causation at common law between negligence and injuries which follow.

The charge of the trial court was erroneous. We add, however, that the nature of the evidence upon which proof necessary to a recovery must rest in cases of this nature and the opportunity afforded for fictitious or greatly exaggerated claims, require that the trier should use caution and scrutinize the evidence with care before granting a recovery; and, if the case is tried to the jury, that the court should instruct them to use a like caution. Pollock, op. cit. p. 40. The situation is in some respects similar to one where a claim is made by one member of a family to recover for services rendered another member against the estate of the latter; and certainly as cautious an approach should be adopted; the claim should be "care-

fully scanned and found established only upon clear and satisfactory proof. . . ." *Howd* v. *MacGregor*, 102 Conn. 331, 334, 122 Atl. 518.

The only ground of liability on the part of the defendant town alleged in the complaint was that it created and maintained a nuisance, in that it had installed and maintained a traffic light in such close proximity to the trolley wires of the defendant company that the trolley poles of passing trolleys came in contact with the electric wires to the light, creating a danger to persons lawfully using the highways. Apart from the method of the original installation of the traffic light, the plaintiff claimed to have proved that in the summer season the trolley wires expanded; when trolleys passed, the trolley pole pushed the wire up so that it touched the cable to the traffic light; that the constant rubbing together of the wires wore through the insulation of the cable; and that the maintenance of the cable so close to the trolley wires created a condition the natural tendency of which was to cause danger. The plaintiff assigns error in the part of the charge dealing with the defendants' liability on the ground of nuisance without specifying in what particulars the error consisted. This assignment imposes no duty upon us to search out possible errors not specifically assigned. *Knox* v. *Binkoski,* 99 Conn. 582, 594, 122 Atl. 400; Conn. App. Proc., § 101. The plaintiff also assigns as error the submission of an interrogatory to the jury asking whether the defendant town had created a nuisance by installing the traffic light and the cable to it. But its claim that this might have misled the jury into disregarding the claimed proof of the condition of danger which subsequently arose through the trolley wire and cable rubbing together is without merit.

A nuisance to be a basis of recovery must have prox-

imately caused the injuries suffered; *Beauton* v. *Connecticut L. & P. Co.*, 125 Conn. 76, 81, 3 Atl. (2d) 315; and the injury must be one which the claimed nuisance has a natural tendency to produce. *Hoffman* v. *Bristol*, 113 Conn. 386, 389, 155 Atl. 499; *Brock-Hall Dairy Co.* v. *New Haven*, 122 Conn. 321, 326, 189 Atl. 182; *Wolfe* v. *Rehbein*, 123 Conn. 110, 116, 193 Atl. 608. Whatever other harm might be likely to result from the changed condition of the wires after their installation, the injury to the plaintiff was not within the scope of the nuisance claimed. Under the plaintiff's claims of proof as we understand them, the injury came about in this way: The heat of summer expanded the trolley wire; when the trolley passed by, its pole would push the trolley wire upward so that it touched the cable to the traffic light; the rubbing of the wires together wore through the insulation of the cable; on the occasion of the accident, the trolley pole became disengaged from the trolley wire, the rope which was designed to hold it broke, and the pole flew up into the air; the result was that the trolley wire was brought into contact with the cable, causing a short circuit; the trolley wire, broken, fell to the street, with the results before described. The plaintiff's injuries thus came about because of an unusual combination of circumstances and the conditions previously existing could not reasonably be found to be such as would have a natural tendency to produce them. Those conditions did not constitute a nuisance as regards the risk of such injuries. *Hassett* v. *Palmer*, 126 Conn. 468, 476, 12 Atl. (2d) 646.

The only liability claimed against the town was on the ground of nuisance; the answer to the interrogatory established that no nuisance was created by the installation of the traffic light; and as matter of law none arose out of the subsequent change in conditions

as regards such a harm as that suffered by the plaintiff. There is no reason for further proceedings against the defendant town.

The judgment in favor of the defendant town is affirmed; that in favor of the defendant company is set aside and a new trial ordered as to it.

In this opinion the other judges concurred.