## ROBERT JOHNSON *v.* CONNECTICUT TRANSIT MANAGEMENT, INC.

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1331

Argued October 21, 1982—decided March 25, 1983

*William C. Galligan,* for the appellant (defendant).

*David T. Walpole,* for the appellee (plaintiff).

COVELLO, J. On February 14, 1977, at approximately 10:06 p.m., the plaintiff boarded the defendant's bus on Hampton Street, Hartford, for carriage to downtown Hartford. After paying the fare, the plaintiff noticed that many windows were broken and that the

aisles and seats were covered with broken glass. The driver offered no explanation or warning concerning the bus's condition. As the plaintiff turned to sit down, a rock shattered the window next to his head peppering his face with granules of shattered glass. The driver immediately pulled from the curb, told the passengers to keep their heads down and proceeded to downtown Hartford by a different route.

Examination of a motor coach accident report submitted by the defendant discloses that on the same evening, at 9:50 p.m., while on the route outbound from Hartford, about two hundred teenagers on both sides of Main Street in the vicinity of Trumbull Street, attacked the bus with bottles and hard objects causing "extensive glass breakage." A further exhibit offered by the defendant reveals that, in addition to the outside mirror, thirteen windows were broken, including ten side windows and three windows in the windshield. The defendant also submitted a schematic map of the route in question. Although no distances are furnished, it is apparent that the bus route goes back into Hartford through the same area where the vandalism occurred.

Shortly after arriving at work, the plaintiff complained of discomfort in the right eye. He went to the emergency room of the Mt. Sinai Hospital at 11 p.m. where personnel irrigated his right eye and conducted a fluorscein examination for foreign bodies. He thereafter saw physicians Malcolm S. Roth and Robert H. Berland for treatment of symptoms which he ascribed to this incident.

The court concluded that the defendant was negligent by continuing to board passengers at a time when there was riotous conduct taking place in the general area, onto a bus, the windows of which were badly broken, thereby making it a target for further riotous conduct. The court also concluded that there was in fact further

riotous conduct, i.e., a brick being thrown through the window, and that this was the proximate cause of the plaintiff's injury. The defendant has appealed.

The defendant first claims that the court erred in concluding that there was negligence. The defendant argues that it had no notice that an unknown person or persons would throw a brick through the bus window on Hampton Street. Since harm of that nature could not be anticipated, the defendant argues that it breached no duty owing to the plaintiff and was therefore not negligent. We do not agree.

"Negligence is a breach of duty. *Collins* v. *City National Bank & Trust Co.*, 131 Conn. 167, 170, 38 A.2d 582 [1944]." *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 304, 93 A.2d 292 (1952). That duty is to exercise due care. *Steinhaus* v. *Steinhaus*, 145 Conn. 95, 97, 139 A.2d 55 (1958).

With respect to common carriers, the level of their duty is "to use the utmost care consistent with the nature of its business to guard its passengers against all dangers which might reasonably and naturally be expected to occur, in view of all the circumstances." *Pillou* v. *Connecticut Co.* 143 Conn. 481, 483–84, 123 A.2d 470 (1956). "The ultimate test of the existence of a duty to use care is found in the forseeability that harm may result if it is not exercised." *Orlo* v. *Connecticut Co.*, 128 Conn. 231, 237, 21 A.2d 402 (1941).

While the defendant points to the total lack of specific history or knowledge concerning an unknown assailant at the Hampton Street bus stop, the court correctly pointed to the general fact that the bus had already suffered significant damage within the preceding twenty minutes from riotous conduct, thus leaving it in a condition rendering it susceptible to further riotous conduct as it prepared to proceed back into the city along the same route from which it had come. In defin-

ing the level of due care required in a given circumstance, it is not necessary that the defendant have "foreseen the probability of harm or that *the particular injury which resulted was forseeable,* but the test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that *harm of the general nature of that suffered was likely to result?"* (Emphasis added.) *Orlo* v. *Connecticut Co.,* supra. Within this broader context, it was forseeable, as the court found, that the damaged condition of the bus as it proceeded back toward the city, the site of the earlier damage, would invite further missile throwing which, in fact, was precisely what happened.

The defendant next claims that the court erred in admitting the report and bill of physician Robert H. Berland who performed a neurological evaluation. The defendant argues that there was no basis for such an examination, as the plaintiff had not been injured in the rock throwing incident. The plaintiff testified that his face was showered with glass and that "[t]he stone hit my face . . . ." He thereafter complained of headaches and the feeling that a foreign object was in his right eye. He testified that he went to Berland so that he could "check out" the headaches. The court concluded that Berland's charges had been incurred as a result of the accident.

A signed medical report and bill of any treating physician is admissible in any personal injury action as being a record made in the ordinary course of business. General Statutes § 52-174 (b). Whether a physician has treated a patient for injuries arising out of a given accident is a matter of fact for the trier to determine. *Slepski* v. *Williams Ford, Inc.,* 170 Conn. 18, 23, 364 A.2d 175 (1975); Maltbie, Conn. App. Proc. § 191. In view of the plaintiff's testimony concerning what physically happened to him and the symptoms he there-

after felt, we conclude that there is an adequate factual basis to support the court's conclusion that the doctor's charges were incurred as the result of the accident.

The defendant finally claims error in the admission of a bill from Mt. Sinai Hospital for an electroencephalogram examination. The defendant argues that the bill was not admissible for the reason that the bill's existence was not disclosed in response to its motion for disclosure and production and for the further reason that the report of this examination was not offered as a means of linking it to the alleged injury.

While Practice Book § 232 imposes a continuing duty to disclose additional information or new material previously requested, the failure to do so does not specifically render the material inadmissible for that reason. Practice Book § 231 authorizes the court, on motion, to make such orders "as the ends of justice require." The entry and content of such an order is a matter within the sound discretion of the court. The defendant here is not claiming an abuse of the court's discretion nor does our examination of the record disclose this to be the case.

While the report of the EEG examination was not admitted in evidence, Berland's report was. His opinion states, "I will arrange for a skull x-ray and an EEG since [the plaintiff] has persistent symptoms." Since we have concluded above that there was an adequate factual basis contained in the plaintiff's description of his symptoms to warrant his having consulted with Berland, the doctor's unchallenged statement contained in his opinion concerning the necessity of the EEG supplies a factual relationship to the injury adequate to satisfy the defendant's claimed deficiency.

There is no error.

In this opinion DALY and SPADA, Js., concurred.