[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM ON MOTION TO STRIKE]
[Facts]
On September 18, 1992 three year old Brandon Courchesne rode his bike to a school bus stop to meet his sister Kailly Courchesne. The school bus came to a stop and as it pulled away struck and injured Brandon who later died of his injuries. The sister who had alighted from the school bus was a short distance from the accident, observed it and witnessed the injuries that led to her brother's death. The plaintiff sister, as the result of this incident claims to have "suffered" severe emotional distress, some or all of which will be permanent in nature." The defendants, the bus company and the Bristol Board of Education have moved to strike those counts of the complaint seeking recovery for the bystander emotional distress of the sister claiming that there is no cause of action under Connecticut law for such relief.
1.
A motion to strike fulfills the purpose of the old common law demurrer whose function was to test the legal sufficiency of any prayer for relief. In this regard one use of the demurrer, and now the motion to strike, was "to test whether or not Connecticut is ready to recognize some newly emerging ground of liability." [Connecticut Civil Procedure], Volume I, Stephenson, Sec. 116 page 470, CF. [Hamon v. Digliani],148 Conn. 710 (1961), [Carey v. Statewide Finance Co.], 3 Conn. Cir. 716 (1966), [Hatala v. Markiewicz], 26 Conn. Sup. 358 (1966),
2.
Since 1973 almost fifty opinions have been written by Superior Court judges on the question of whether to recognize bystander emotional distress claims; those interested in the numbers would find thirty two cases have recognized the theory and sixteen have ruled there is no such cause of action in Connecticut. Some of the leading cases for recognition are [D'Amico v. Alvarez Shipping Co.], 31 Conn. Sup. 164, 168 (1973), [Kearney v. Philips Industries Inc.], 708 F. Sup. 479, 483 D. Conn. 1989, (interpreting Connecticut law), [Buynovsky v. FordMotor Co. et al], 1 Conn. L. Rep. 542 (1990); [Sobeleski v.Sobelski], 2 Conn. Rep. 569 (1990), [Short v. State], 4 Conn. L. Rep. 77 (1991), [Finley v. Masiello Bus Co.], 8 Conn. L. Rep. 1 (1992), [Hendrickson v. Frick], 1993 Ct. Casebase 3588 (4/15/93), CT Page 4937 [Alderfer et al v. Scarvales et al], 9 Conn.L.Rep. 86 (1993).
The leading cases against acceptance of this theory of recovery are [Kinsella v. Hartford Hospital], 11 CLT No. 31 page 15 (1985), [Borrs v. St. Vincent's Hospital], 2 CSCR 936 (1987), [Tuten v. Bishops Garage Inc.], 4 CSCR 520 (1989), [Brown v.Cohen, Foster Reinzo], 5 CSCR 376 (1990), [Seymour v.Patterson], 5 CSCR 932 (1990), [Messina v. Vellafonck],5 Conn. L. Rptr. 32 (1991), [Carter v. Shaw], 5 Conn. L Rptr. 248 (1991).
The conflict among the trial court judges is due to their different interpretations of three Supreme Court decisions, [Strazza v. McKittrick], 146 Conn. 714 (1959, [Amodio v.Cunningham], 182 Conn. 80 (1980), and [Maloney v. Conroy],208 Conn. 392 (1988), which have discussed bystander emotional distress. The leading case in this area is the 1968 California case of [Dillon v. Legg], 69 Cal. Rptr 72,441 P.2d 912 which recognized a cause of action for emotional distress suffered by a mother who had seen her child struck and killed by a driver whose negligent operation did not endanger the mother. [Strazza] was decided nine years before [Dillon] so it can hardly be said to have addressed the ramifications of a doctrine that even now in California and elsewhere is still developing and being refined. Given the facts in [Strazza] recovery wouldn't have been allowed even under [Dillon] or the later refinement of [Dillon], [Thing v. La Chusa],257 Cal.Rptr. 865, 771 P.2d 814, 829 (1989). In [Strazza] the mother didn't witness any injury to her child because the child wasn't injured — the second requirement of [Thing] could not have been met because a plaintiff must be present at the scene of an injury producing event when it occurs and must be aware that it is causing injury to the victim.
[Amodio] is a medical malpractice case which refers to [Dillon] and the concept of allowing bystanders to recover for emotional distress. It first discusses the legal and practical difficulties that would be presented by permitting such a cause of action, 182 Conn. at pp. 84 through 87. Then it discusses [Dillon] and its attempt to deal with the problems raised by the cause of action. The [Amodio] court then goes on to discuss the facts of the case before it and decides "that even were we inclined to adopt the approach taken in [Dillon] and the cases relying thereon, the complaint in the present case would nonetheless fail to state a cognizable cause of CT Page 4938 action." See discussion Id at pp 87-93.
[Maloney] is another medical malpractice case. At one point the court said "we are not inclined to resume our [dalliance] with the [Dillon] guidelines that we held not be satisfied when we disposed of the malpractice emotional disturbance claim in [Amodio], 208 Conn. at page 402 — not good news for the [Dillon] devotees. But in the very same paragraph their hopes are revived — "[Whatever may be the situation inother contexts] where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice on another person, we should return to the position articulated in [Strazza] that there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another". Id at page 402. (emphasis added in both quotes). The court then spends a few pages discussing the practical difficulties that would be presented to hospitals and medical treatment facilities if [Dillon] were to be applied to medical malpractice claims — a discussion that would have been rendered completely unnecessary if [Dillon] had been rejected outright.
From reading its opinions this court cannot determine what the Supreme Court's position is let alone will be on a cause of action for bystander emotional distress not involving medical malpractice. Trial courts that view the Supreme Court cases, especially [Maloney] as barring recovery on such a claim extol the virtues of stare decisis and point with fear and trembling to the chaos that would result if trial judges felt free to depart from established law. The problem is that it is not clear what the established law is or whether the Supreme Court meant to finally establish the law in this area apart from medical malpractice cases. It seems appropriate that under these circumstances, before litigants are thrown out of court on motions to strike, they should have a court deal with the merits of their claims. Litigants opposing the cause of action are also entitled to a review of their position on the merits rather than receiving an opinion based on a scriptural analysis of Supreme Court opinions resting on nuances, turns or phrase and a comparison of the holy texts in this area — [Strazza], [Amodio], and [Maloney].
3.
In [Dillon v. Lego], 441 P.2d 912 (Cal. 1968) the Supreme CT Page 4939 Court of California held that damages may be recovered for emotional trauma and physical injury resulting from a plaintiff witnessing an accident in which a closely related person is injured or killed by the negligence of a defendant. The court analyzed the issue of whether liability should be imposed in terms of foreseeability. Quoting from the [Law ofTorts], Harper, James and Gray, § 18.2, page 655 the court noted that "The obligation to refrain from . . . particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous. Duty, in other words, is measured by the scope of the risk that negligent conduct foreseeably entails." In order to determine the scope of reasonable foreseeability the Dillon court set up several criteria which must be met before liability is imposed id at page 920. In the later case of [Thing v. La Chusa], 771 P.2d 814 (Cal 1989) the California court modified the [Dillon] test because it did not want to impose "unlimited liability for emotional distress on a defendant whose conduct is simply negligent" id at page 829. At the same page the court reasoned:
 "In identifying those persons and the circumstances in which the defendant will be held to redress the injury, it is appropriate to restrict recovery to those persons who will suffer an emotional impact beyond the impact that can be anticipated whenever one learns that a relative is injured, or dies or the emotion felt by a `disinterested' witness. The class of potential plaintiffs should be limited to those who because of their relationship suffer the greatest emotional distress. When the right to recover is limited in this manner, the liability bears a reasonable relationship to the culpability of the negligent defendant."
In light of these concerns the variation of the [Dillon] rule now operative in California is "that a plaintiff may recover damages for emotional distress by observing the negligently inflicted injury of a third person, if but only if, said plaintiff: (1) is closely related to the injury CT Page 4940 victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress — a reaction beyond that would be anticipated in a disinterested witness and which is not abnormal response to the circumstances" 71 P.2d at pp 829-830, cf. [Frame v. Kothari], 560 A.2d 675, 678 (N.J., 1989).
It would be difficult to contemplate our appellate courts rejecting this cause of action on the grounds of lack of foreseeability. As note in [Connecticut Law of Tort], 3d, Wright § 33, pp 59-60 Connecticut seems to follow the dissenting opinion of Judge Andrews in [Palsghaf v. Long IslandRailroad], 162 N.E. 99, 101 (N.Y., 1928). In light of cases like [Mitnick v. Whalen Bros. Inc.], 115 Conn. 650 (1932), [Carney v.DeWees], 136 Conn. 256 (1949), and [Orlo v. Connecticut Co.],128 Conn. 231 (1941) such a result would be unexpected.
Even courts rejecting [Dillon] do not make their decision turn on lack of foreseeability, see [Tobin v. Grossman],249 N.E.2d 419, 422 (N.Y., 1969), a case cited prominently in both [Amodio v. Cunningham], supra and [Maloney v. Conroy] supra. Courts have often analyzed the foreseeability problem presented by this theory of recovery in terms of what Prosser calls the strongest and classic case — the mother observing the injury or death of her child.
As noted in [Tobin], speaking in the context of the facts of that case, and referring to Prosser on Torts:
 "On foreseeability, it is hardly cogent to assert that the negligent actor if he (sic) could foresee injury to the child that he (sic) should not also foresee at the same time harm to the mother who, especially in the case of children of tender years, is likely to be present or about." 249 N.E.2d at page 422.
Also see [Bovsun v. Samperi], 461 N.E.2d 843, 846 (N.Y., 1984) (see footnote 5).
As said more fully in Prosser Keeton [On Torts], 5th ed, § 54 page 366. CT Page 4941
 "It seems sufficiently obvious that the shock of a mother at danger or harm to her child may be both a real and a serious injury. If a duty to her requires that she herself be in some foreseeable danger, then it may fairly be argued that when a child is endangered it is not beyond contemplation that its mother will be some where in the vicinity, and thus may suffer serious shock."
The same reasoning would apply at least to fathers and siblings of young children.
4.
What then are the reasons advanced by courts and judges for rejecting the theories of recovery proposed in [Dillon] and its later modification set forth in [Thing v. La Chusa] supra.
(A)
[Tobin v. Grossman] supra is a leading case rejecting [Dillon]. But when it was considering whether to adopt [Dillon] it is interesting to note that [Tobin v. Grossman] rejected outright the notion that "as a ground for denying a cause of action that there will be a proliferation of claims. It suffices that if a cognizable wrong has been committed that there must be a remedy, whatever the burden of the courts." 249 N.E.2d at page 422.
(B)
Also in rejecting [Dillon Tobin] did not rely on the argument that recognizing this right of recovery may increase the number of fraudulent claims. The court cited [Battalla v.State of New York], 10 N.Y.2d 237 wherein it is said "The argument from mere expediency cannot commend itself to a court of justice, resulting in the denial of a logical legal right and remedy in [all] cases because in [some] a fictitious injury may be urged as a real one . . . (the court can) . . . rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out dishonest claims" 10 N.Y.2d at pp 240-242. Somehow this court CT Page 4942 doesn't see the problem presented by this issue as having to do with the threat that there's a band of mothers, fathers, and siblings out there in the world beyond the courts who are just waiting to bilk defendants and insurance companies out of millions of dollars because they had the good fortune to see a beloved child killed before their eyes. This rather insupportable notion is also effectively dealt with and rejected in [Dillon] itself at 441 P.2d pages 917-919. In [OrloConnecticut Co.], 128 Conn. 231, 239 (1941) the court said, "Certainly it is a very questionable position for a court to take that because the possibility of encouraging fictitious claims compensation should be denied those who have actively suffered serious injury through the negligence of another."
(C)
The credible reasons why the courts and some dissenting opinions have rejected the [Dillon-Thing] line of cases are set forth in the dissent in [Dillon] at 441 P.2d pp 925 et seq., [Tobin] at 249 N.E.2d pp 423 et seq., also see [Bovsun v.Samperi], at 461 N.E.2d pp 846 et seq. The discussion in [Maloney v. Conroy] supra also refers to some of the concerns our court had with this doctrine.
 i.
One fear is the threat of "unlimited liability" that adoption of the [Dillon-Thing] reasoning would entail. "Constantly advancing insurance costs can become an undue burden . . . recoveries in a single accident of this kind are not likely to stay within ordinary, let alone compulsory insurance liability limits," [Tobin v. Grossman], 249 N.E.2d at page 423. But this argument applies no more peculiarly to bystander emotional distress cases than it does to other already recognized tort actions where recovery is permitted for emotional distress, cf [Mitnick v. Whalen Brothers],115 Conn. 650, 651 and [Orlo v. Conn. Co.], 128 Conn. 231,236-240.
The [Bovsun v. Sampieri] supra New York went beyond [Tobinv. Grossman] supra. It did not adopt the [Dillon-Thing] approach but the so-called zone of danger rule which will be discussed later. Under that rule one who is threatened with bodily harm due to the defendant's negligence can recover for emotional distress resulting from viewing the death or serious physical CT Page 4943 injury of a member of his or her immediate family.
The court reasoned that "use of the zone of danger rule thus mitigates the possibility of unlimited recovery, an overriding apprehension expressed in [Tobin] by restricting liability in a much narrower fashion than does the [Dillon] rule" 461 N.E.2d at page 847. The court went on to note that these zone of danger cases "may not be altogether common." In footnote 7 on the same page the court says "It is somewhat surprising that our research reveals only two reported appellate decisions actively upholding recovery in those jurisdictions that apply the zone of danger approach."
But given the well-crafted modifications placed on [Dillon] by [Thing v. La Chusa] the concerns of "unlimited liability" are in fact dealt with. Also realistically and factually speaking how many cases are going to involve situations where recovery would be allowed if we accepted the [Dillon-Thing] rule but would not be allowed if we followed New York and applied the zone of danger rule. The cautious New York court looking at jurisdictions [all over the country] found only [two cases] that made it to the appellate courts on the zone of danger rule — how many new cases will arise if we went beyond New York and accepted [Dillon-Thing]? Although many Superior Court decisions have wrestled with this issue, it must be remembered that these cases stretch over a period of twenty years. Also if the [Thing v. La Chusa] restrictions on recovery had been operative no doubt many of the claims made in these cases could not have been brought.
Furthermore courts should be hesitant to make broad generalizations about "unlimited liability" and the specter of increasing insurance costs as a reason to deny recovery for a wrong for which otherwise there should be a remedy. What could be more arbitrary absent a detailed analysis of actual insurance costs and risks and comparison of insurance costs in states that have adopted the [Dillon-Thing] rule, rejected it, or adopted the zone of danger rule.
California has allowed recovery for bystander emotional distress since [Dillon] in 1968. New Jersey recognized the rule in 1980 [Portee v. Jaffee], 417 A.2d 521 (N.J. 1980) and recovery has been allowed in England since 1925 see [Hambrookv. Stokes Bros.], 1 KB 141. The two states are heavily populated industrial states with strong agricultural sectors. CT Page 4944 The English rule has country wide application. There is no indication that allowing recovery for this cause of action has disrupted the insurance industry or pauperized whole classes of defendants in these jurisdictions.
 ii
Another concern might be facetiously described as that life is terrible and we all have to die anyway some day argument. Thus in [Tobin v. Grossman] at 249 N.E.2d page 424 it says:
 "The problem for the law is to limit the legal consequences of wrongs to a controllable degree. The risks of indirect harm from the loss or injury of loved ones is persuasive at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of having and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed."
The argument is circular and assumes its conclusion. Beyond that, however, it is the type of position more understandable to lawyers and judges than people who are affected by what we do or don't do, what we permit and don't permit. The average person I believe would accept that there is a risk of harm from loss or injury to loved ones, indeed this is a risk of living and having children. But the ordinary citizen would also understand that it is truly unique and beyond the risks one should have to run in life or that one should be expected to run that because of another's negligence a father or mother should have to see a beloved child or a sister a young brother crushed to death under the wheels of a bus or car. To borrow from the DSM-III-R criteria for Post Traumatic Stress Disorder all reasonable people would agree that a person who has witnessed such a horrific thing "has experience an event that is outside the range of usual human experience and that would be markedly distressing to almost anyone." The court in [Thing v. La Chusa] supra dealt with this concern by requiring that in addition to the plaintiff having to be a close relative and having to observe CT Page 4945 the injury producing even recovery required that "as a result (the plaintiff) suffers severe emotional distress — a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances" 771 P.2d at pp 829-830. Why this latter requirement would be so difficult to establish or rebut through ordinary expert testimony is never really explained by the proponents of the motion to strike in this case although they allude to the difficulty. The psychiatric community regularly makes analogous judgments for example when determining whether a person suffers from post-traumatic stress disorder under the DSR-III-R guidelines.
 iii
The most hard-pressed objection to recovery is a somewhat different concern — arbitrariness. It seems to go something like this: Prosser who strongly favors this theory of recovery concedes that some limitation must be placed on this liability (§ 54, page 366) and the California courts have obviously agreed as evidenced by the rules set down in [Dillon] and the later decision of [Thing v. La Chusa]. That being the case arbitrary distinctions are being drawn and can never satisfactorily be explained. In other words how is it justifiable to permit recovery to a parent or sibling who actually has witnessed the accident and not permit recovery, to such a plaintiff who comes on the accident scene two or three minutes later. Thus the court in [Thing v. La Chusa] would bar recovery in the latter case because even if it was foreseeable that such a person would suffer emotional distress "this fact doesn't justify the imposition of what threatens to become unlimited liability for emotional distress on a defendant whose conduct is simply negligent."
But it is really not an acceptable argument to say that where rational attempts to control liability by the establishment of limitations on it exclude certain otherwise sympathetic cases then no one should be permitted to recover because it's not fair to the people whose cases are excluded. How different in reasoning is that from the position rejected summarily in [Orlo v. Connecticut] supra that because some fictitious claims will be brought under a new theory of recovery no one, even those with valid claims, should be allowed relief? CT Page 4946
The "zone of danger rule" adopted by the New York courts, [Bovsun v. Sampieri] supra, creates even more problems of arbitrariness than [Thing v. La Chusa's] limitations on liability. How on earth for example can one justify permitting recovery for emotional distress to a mother in the "zone of danger" and walking across the street with her child who is not struck by the car of the negligent driver but deny recovery to a mother waiting on the curb who witnesses the accident but is not in the so-called "zone of danger."? The issue of arbitrariness really is central to the concern of courts that are reluctant to permit recovery for bystander emotional distress. Oddly enough these courts do recognize a serious wrong has been done to the plaintiff by the negligent actor and do seem to concede that at least in cases involving injury or death to children witnessed by parents and by logical extension by siblings that such emotional distress for at least this category of plaintiff is foreseeable. But the court in [Tobin v. Grossman] supra for example is opposed to allowing this type of recovery because of a reluctance of imposing unlimited liability on a defendant for what is after all a simple act of negligence. What the [Tobin] court does not appreciate is that given the recognition of the wrong and the concession of foreseeability, its refusal to permit recovery on this theory is in itself arbitrary — an arbitrary limitation on the amount of recovery that a negligent tortfeasor might expected to be exposed to. The post [Tobin] adoption by the New York courts of the so-called "zone of danger" rule is really an implicit recognition of and reaction to the arbitrary limitation on recovery created by [Tobin]; but the new rule as noted has its own problems of arbitrariness.
The point is that whether one rejects [Dillon], or its refinement in [Thing v. La Chusa], adopts the reasoning of those cases or wants to stop off at the half-way house of the "zone of danger" rule there is an element of arbitrariness in all these approaches.
I believe that given this it makes more sense to adopt the [Thing v. La Chusa] approach with perhaps some added limitations as suggested at the conclusion of this opinion. We do operate under the principal that where there is a wrong there should be a remedy. Also in a jurisdiction that appears to adopt the dissenting opinion of Judge Andrews in [Palsgraf] and has decided what are considered leading cases like [Orlo v.Connecticut Company] supra recovery for this type of claim for CT Page 4947 emotional distress should not be seen as a revolutionary or unexpected development in our law. We should be willing to rely on courts, juries, and expert testimony to weed out unmerited cases rather than barring a cause of action because in some cases unmerited awards might result. I would have thought that that was what the reasoning in [Orlo v.Connecticut Company] was all about.
This court then does not accept any of the traditional reasons advanced for rejecting bystander recovery for emotional distress at least when the limitations contemplated in [Thing v. La Chusa] are applied. However, as noted, the latter case would permit a plaintiff to seek recovery under this doctrine for observed injury or death of a close relative. Much of the discussion in this decision and the cases cited involve cases where the injury or death of a child is witnessed by a parent. Certainly as Prosser indicated that is the strongest and classic case for permitting recovery for bystander emotional distress and an appellate court could limit the application of the action to cases by parents or siblings of the child. Any recognition of the right of recovery for bystander emotional distress limited to the parents or siblings of an injured child would not bar the claim in this case however.
A further possible limitation of the doctrine might limit recovery to situations where the child is injured at school bus drop off points, day care centers, or athletic or social events. People who run these facilities or events or school bus drivers should perhaps face the higher degree of exposure to liability that this doctrine affords since they regularly confront the situations where risk of injury to children might occur and the presence of parents or siblings is certainly to be expected.
Such a limitation to the applicability of this doctrine would again not apply given the facts of this case.
The motion to strike by all defendants is denied.
Corradino, J. CT Page 4948