JANE DOE *v.* CATHOLIC FAMILY SERVICES, INC.

SUPERIOR COURT JUDICIAL DISTRICT OF FILE NO. 231104
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed June 14, 1979

*Cardwell, Cardwell & Smoragiewicz,* for the plaintiff.

*Lynch, Riscassi & Stabnick,* for the defendant.

FRANCIS X. HENNESSY, J. The plaintiff mother seeks a writ of habeas corpus to determine her rights to her child which were terminated by the Probate Court.

The plaintiff alleges that she executed documents waiving notice of the hearing in the Probate Court and consenting to the termination of her parental rights in her child without benefit of counsel and without an understanding of the full effect of her waiver and consent. Because she executed the waiver and consent, the plaintiff did not receive notice of the Probate Court hearing and was not present at the hearing wherein the Probate Court terminated her parental rights and appointed the defendant Catholic Family Services, Inc. statutory parent of the child for the express purpose of placing the child in an adoptive home.

The defendant child placement agency claims that all statutory requirements were adhered to and that the plaintiff mother waived her rights to notice of the hearing, and consented to the termination of her parental rights and, as a result, cannot successfully challenge the defendant's authority to place the child in adoption.

The plaintiff does not challenge the manner in which the Probate Court acted nor does she challenge the statutory authority which allows for a waiver of notice of the hearing in Probate Court or the right of the Probate Court to accept a written consent by the plaintiff to the termination of her parental rights. The plaintiff does, however, claim that she executed the waiver and consent forms without fully understanding the effect those actions would have on her future rights in the child.

Section 45-61d of the General Statutes, entitled "Hearing re Termination of Parental Rights, Time, Place, Notice," states in part: ". . . Any person may waive his right to such notice by filing a written waiver thereof in the appropriate court." Section 45-61f states: ". . . At such hearing . . . the court, upon finding that . . . (4) both parents, or the sole parent, of such child consent to termination of their parental rights with respect to such child, may approve the petition terminating parental rights . . . and appoint a statutory parent."

The relationship between parent and child is constitutionally protected. *Wisconsin* v. *Yoder,* 406 U.S. 205; *Stanley* v. *Illinois,* 405 U.S. 645. It is therefore essential that the waiver of notice to the probate hearing be proper. If the waiver is not proper, due process is not afforded the plaintiff and the Probate Court does not have jurisdiction.

Waiver has been defined by the Supreme Court of Connecticut as the voluntary relinquishment of a known right. *DelVecchio* v. *DelVecchio,* 146 Conn. 188. The act of consenting to the termination of her parental rights in her child requires that the plaintiff in this matter do so voluntarily and knowingly. The agreement is intended to effect a surrender of rights and it cannot seriously be contested that the interest surrendered is nothing less than a constitutional right of the first magnitude, the right of a parent to raise her child. *Stanley* v. *Illinois,* supra.

The matter before the court is not one which can be decided in the context of the best interests of the child. It is a matter which requires a review of the procedures used and a determination by the court as to whether the procedures used as applied to the plaintiff accorded her due process in terminating her parental rights.

The plaintiff is a twenty-one year old woman and a high school graduate. There is no indication that she has any intellectual, physical or emotional infirmity which would impair her understanding of her rights if they were explained to her in a reasonable manner. The court is aware that the plaintiff was unmarried during the period she carried the child and at the time she gave birth. The plaintiff wished to maintain confidentiality as to her condition because she did not want certain of her family members to know about it. The plaintiff was a somewhat frightened and confused young woman, who felt betrayed.

Since many young women are in a position similar to that of the plaintiff, it is important that the circumstances surrounding the waiver of rights as significant as those under discussion be viewed with as critical an eye as justice will allow.

Catholic Family Services, Inc., the defendant, is a nonprofit organization which primarily counsels people and families in need of help. It has had much experience in counseling unwed mothers. A worker from Catholic Family Services who has a bachelor's degree in psychology and has had six years' experience in general counseling and three to four years' experience in problem pregnancy counseling was assigned to work with the plaintiff. There were approximately twelve counseling sessions between the worker and the plaintiff during a period of little more than two months prior to the birth of the child. Those sessions involved planning for the future of the child. The worker testified that the information given to the plaintiff was about adoption and its significance and about keeping the child and the significance of that choice. The worker claims that the sessions were evenly divided between the two choices. Termination of parental rights and

the adoption procedures were part of the counseling sessions. The plaintiff was not requested to make a choice between keeping the child or placing it for adoption. The sessions were to help her understand the problems connected with whatever choice she made.

The plaintiff was told, as part of these sessions, that she should review her legal rights with respect to the child with a lawyer. Even though she had been represented by counsel a few months before she began these counseling sessions, she chose to use the services of the attorney who represented Catholic Family Services, who testified that he had met with the plaintiff and had gone over her rights with respect to the child. He further testified in great detail as to his conversation with the plaintiff concerning each line of the application to terminate parental rights and the waiver of notice of the Probate Court hearing, and testified that she appeared attentive and had asked questions as to certain portions of the form.

The child was born and the plaintiff mother left the hospital without the child. Catholic Family Services took the child and placed it in temporary care. Approximately three weeks after delivery the plaintiff was asked to make a decision as to the child. She wished to proceed with having the baby adopted and an appointment was made to meet at the offices of Catholic Family Services with the worker to sign the proper forms. At that meeting, which was attended by the plaintiff, the father of the child and the worker, the worker went over the Probate Court forms with the plaintiff and the father and both executed a waiver of notice of the hearing in Probate Court as well as a consent to have their parental rights terminated. It was explained that the child would be placed in adoption.

The probate proceedings were held without the plaintiff's presence, her parental rights were terminated, and Catholic Family Services was named statutory parent and the child was placed in an adoptive home. Approximately two and one-half months later the plaintiff called Catholic Family Services and requested the return of the child. The plaintiff mother stated that the worker consistently spoke to her about having the child adopted during the counseling sessions. There was little or no discussion of what services were available to her if she kept the child. The plaintiff mother understood that, if she consented to the termination of her parental rights, the child would be placed in an adoptive home but that she could change her mind and have the child returned to her anytime during the next year.

The plaintiff further claimed that the attorney for Catholic Family Services read the forms to her but that she was not paying attention. She also claimed that she was physically and emotionally disabled upon leaving the hospital and felt that she was pressured into making a decision by the worker at a time when she was not fully capable of doing so. She contends that the sum total of these circumstances and conditions is such that her waiver and consent were actions not taken intelligently and voluntarily.

The court must decide if the procedure followed by Catholic Family Services was structured so as to protect the rights of a young vulnerable woman. It must also decide whether the facts are consistent with fairness, the claimed purpose of the procedure.

The procedure, as outlined in preceding paragraphs, offers balanced counseling concerning options for the future, with no pressure exerted in

one direction or the other. The counseling is conducted over a period of months prior to delivery. Legal counsel is urged and provided, albeit by the attorney who represents Catholic Family Services. A full explanation of the mother's right to keep the child or to give the child up for adoption is given. After the mother is home from the hospital for several weeks, a decision is requested. The forms necessary for adoption are explained again and executed.

This procedure is adequate. It is consistent with fairness and has many safeguards built into it. The court would feel more secure if the above described procedure included independent counsel who not only would explain to the mother her legal rights but would also be present at the meeting when the documents were executed to explain them again to her. The procedure would provide more fairness if the wording of the legal documents concerning waiver of notice and consent to termination of parental rights had a brief explanatory paragraph in clear, concise and simple language which would define in nonlegal terms what is meant by waiver of notice of a hearing and termination of parental rights.

The witnesses were not in agreement as to certain facts. The plaintiff claimed that the worker did not tell her about supportive services available to her if she decided to keep the child. The worker, however, testified that she told the plaintiff of several supportive services that could help her. One of the plaintiff's witnesses testified that she told the plaintiff of programs for unwed mothers—programs which were explained to her by her social worker. The court is convinced that the plaintiff knew that there were supportive programs available to her if she decided to keep the child.

The plaintiff claimed that the worker talked only of adoption but under cross-examination she admitted that there were some sessions concerning keeping the child. She also claimed that she was so physically disabled upon her return home from the hospital that she was bedridden for one week and was not much better for two more weeks. She claimed that her condition was such as to impair her understanding and her will to resist the pressure placed upon her for a decision concerning the child. On cross-examination, it was shown that she did not seek any appointment with a physician to investigate or relieve this seemingly serious condition. She testified that she saw a physician only for her final after-birth examination and was told that there were no detrimental after effects from the delivery of the child. The court has no evidence which would allow it to believe that the plaintiff's condition during the weeks after birth was serious enough to impair her faculties.

The plaintiff claimed that she did not pay attention to legal counsel and did not ask any questions of him. The attorney for Catholic Family Services who explained the plaintiff's legal rights to her testified that he has been explaining such rights to women in similar circumstances for a period of eighteen years and that he follows a set pattern to make certain that he clearly explains waiver and consent and the mother's right to keep the child and always explains in great detail, making certain that the woman understands the seriousness of it, that a termination is an ending of the mother's legal right to the child for all time. The plaintiff never denied that the attorney said these things, but claimed on cross-examination that she did not remember whether he said these things. The court is convinced that the attorney for Catholic Family Services did in fact explain the plaintiff's rights to her in sufficient detail so that she should have understood them.

The question remains, did the plaintiff in fact understand that, when she signed the forms, she was giving up her child and that she had no further control over the child?

Although the testimony is somewhat contradictory, the recollection of the worker for Catholic Family Services is that after signing the waiver and consent forms, the plaintiff came to her, told her she knew that Catholic Family Services had legal control of the child and suggested that the child be placed with her rather than with the adoptive parents.

The court, after a review of the procedure used and the facts presented, is convinced that the plaintiff was accorded her rights within the framework of a fair procedure. She has not successfully shown the court that due process was not afforded her.

The court concludes that the Court of Probate had jurisdiction and that the parental rights of the mother, Jane Doe, have been properly and legally terminated. The court further finds that Catholic Family Services is the statutory parent of the child and, therefore, the demand for custody of the child by the plaintiff is denied.