JOHN DOE ET AL.* *v.* FRANK CUOMO

SUPERIOR COURT

LAVINE, J. This case presents an issue of apparent first impression in Connecticut: whether the parents of a minor who alleges to have been sexually assaulted may assert a cause of action for negligent infliction of emotional distress for themselves. The court concludes

* In light of the subject matter of this case, the names of the plaintiffs have been changed to ensure anonymity and the docket number, names of counsel and date of decision have been intentionally omitted.

that they may and denies the defendant's pending motion to strike two counts of the complaint.

The complaint alleges that the minor plaintiff, bringing the action in the present case through her parent, was a guest in the defendant's home on March 28, 1992, and that the plaintiff parents had entrusted her to the care of the defendant. The complaint alleges further that the defendant intentionally committed a willful, wanton and malicious sexual assault on the minor plaintiff.

As to the minor plaintiff, the complaint alleges intentional sexual assault in the first count, reckless sexual assault in the second count, negligent sexual assault in the third count, intentional risk of injury to a minor child in the fourth count, negligent risk of injury to a minor child in the fifth count, unlawful restraint in the sixth count, intentional infliction of emotional distress in the seventh count and negligent infliction of emotional distress in the eighth count.

The ninth, tenth and eleventh counts relate to injuries the parents themselves claim to have suffered as a consequence of the defendant's alleged sexual assault on their daughter. In the ninth count, they allege loss of consortium. In the tenth count, after incorporating by reference various allegations made earlier, they allege that "[t]he defendant knew, or should have known, that the aforementioned conduct involved an unreasonable risk of causing emotional distress to the plaintiff parents and the defendant knew or should have known, that said distress might result in illness or bodily harm to the plaintiff parents." As a consequence, they allege further that they have "suffered emotional distress whereby their nerves and health have been shocked, weakened and impaired." In the eleventh count, after incorporating by reference various allegations made previously, they allege that the defendant's

actions have proximately caused them to incur expenses for the medical care and attention of the minor plaintiff, which has caused and will cause them loss and damage.

The defendant has denied all of the substantive allegations in the complaint.

By a January 27, 1994 motion to strike and a memorandum in support, the defendant has moved to strike the tenth and eleventh counts of the complaint. The defendant argues that these counts fail to state cognizable causes of action under Connecticut law because the alleged victim's parents "do not claim to have been present at the scene of the injury producing event at the time it occurred, and to have been contemporaneously aware that said event was causing injury to the victim." In making this argument, the defendant relies heavily on the line of cases relating to claims for bystander emotional distress. According to the defendant, the rule recognized by the California Supreme Court in *Dillon* v. *Legg,* 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968), as discussed by Connecticut courts, see, e.g., *Amodio* v. *Cunningham,* 182 Conn. 80, 438 A.2d 6 (1980), has three prerequisites. To state a cause of action, a plaintiff must allege a close relationship to the victim, presence at the scene of the injury producing event at the time it occurred, awareness that the victim was being injured and the suffering of serious emotional distress beyond that which could be anticipated in a disinterested witness. The defendant claims in essence that the plaintiff parents fail to satisfy the second prerequisite.

The plaintiffs' March 14, 1994 memorandum in opposition to the defendant's motion to strike argues that the claim asserted in the tenth count is not a claim for bystander distress at all. As to the tenth count, the plaintiff parents argue that they are simply asserting

a claim for negligent infliction of emotional distress, a cause of action long recognized in Connecticut decisions. As for the eleventh count, the plaintiffs contend that this is merely a claim for medical bills incurred by the minor plaintiff, for which the parents are responsible.[1]

As a threshold matter, the court agrees with the plaintiffs that the allegations of the complaint do not bring the present case within the analytical framework of the line of cases alleging bystander emotional distress, a tort that has been recognized in various Superior Court decisions; see, e.g., *Shabazz* v. *Price,* Superior Court, judicial district of New Haven, Docket No. 353764S (May 23, 1994, 11 Conn. L. Rptr. 334) (*Hodgson, J.*); but whose existence has not yet been acknowledged by our Supreme Court. See also *Amodio* v. *Cunningham,* supra, 182 Conn. 84 (1980); *Strazza* v. *McKittrick,* 146 Conn. 714, 718–19, 156 A.2d 149 (1959); *Rodriguez* v. *Bristol Housing Authority,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 454786S (March 16, 1994, 9 C.S.C.R. 418) (*Berger, J.*). Bystander cases typically involve claims by parents or spouses that they have been harmed by being exposed to the shock of observing injury or death inflicted on a child, spouse, or loved one as a consequence of a traumatic event. There is no claim in the complaint in the present case, however, that the plaintiff parents had a contemporaneous sensory perception of the assaultive behavior alleged. Quite to the contrary, the essence of the complaint is that the tortfeasor acted outside the presence of the protective gaze of the parents, violating the trust reposed in him. Consequently, the court rejects the defendant's arguments insofar as they are based on the rationale

---

[1] The defendant has apparently misconstrued count eleven. In count eleven, the plaintiff parents seek expenses for sums spent in connection with treatment for their daughter, not for themselves.

of the bystander cases. Cf. *Hall* v. *Mt. Sinai Hospital,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 516071 (January 27, 1993) (*Hale, J.*). "It is meaningless to talk about the zone of danger of a rape; if the mother had been present or within the zone of danger, there would have been no rape." *Schurk* v. *Christensen,* 80 Wash. 2d 652, 665, 497 P.2d 937 (1972). (Finley, J., dissenting).

The allegations of the complaint must, of course, be accepted as true and construed most favorably to the plaintiffs in the present case for purposes of ruling on the pending motion to strike. *Ferryman* v. *Groton,* 212 Conn. 138, 142, 561 A.2d 432 (1989); *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 170, 544 A.2d 1185 (1988). Facts implied by the allegations in a complaint are deemed sufficiently pleaded and need not be alleged expressly. *Bouchard* v. *People's Bank,* 219 Conn. 465, 471, 594 A.2d 1 (1991). The court views the allegations in the tenth count as seeking to set out a cause of action for negligent infliction of emotional distress. The court is, therefore, guided in its analysis by general principles of tort law as well as by precedents in this area, in particular, *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 21 A.2d 402 (1941), *Urban* v. *Hartford Gas Co.,* 139 Conn. 301, 93 A.2d 292 (1952), and *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 398 A.2d 1180 (1978). A somewhat extended discussion of these cases is required to put this court's ruling into proper context following a brief detour into the black letter law of negligence.

In its simplest formulation, negligence is defined as the breach of a legal duty. Where there is no legal duty between the person alleging injury and the defendant, there can be no actionable negligence. *Neal* v. *Shields, Inc.,* 166 Conn. 3, 12–13, 347 A.2d 78 (1974). In the typical negligence case, a cause of action is stated where a duty is alleged, the duty is alleged to have been

breached, the alleged breach of duty proximately causes injury, and damages result. *Doe* v. *Manheimer,* 212 Conn. 748, 755, 563 A.2d 699 (1989). The specific concerns presented in the case at issue must be viewed through this general overlay.

In *Orlo* v. *Connecticut Co.,* supra, 128 Conn. 231, decided more than one half of a century ago, the plaintiff was a passenger in an automobile that was following a trolley car. Due to the alleged negligence of the trolleyman, the trolley pole came in contact with the trolley wire causing wires to break. The driver of the automobile carrying the plaintiff stepped from the car and received an electric shock while the plaintiff sat in the automobile. The plaintiff claimed to have suffered nervous shock and fright causing him to shake and tremble, claimed to have been confined to the hospital for a month, and further claimed that a preexisting condition of diabetes and arteriosclerosis was aggravated. At trial, the court charged the jury that for the plaintiff to recover, he must prove a contemporaneous, physical injury, though slight. The Supreme Court reversed, finding that the charge was erroneous. While acknowledging the accepted view that "there can be no recovery for mere fright, nervous shock or other mental disturbance where there is no outward manifestation of their effects"; id., 235; the court also acknowledged that "there has been a definite tendency toward the enlargement of the right of recovery for damages resulting from fright or nervous shock." Advances in medical knowledge had tended to minimize "the difficulty in tracing with any certainty the resulting injury back through the fright or nervous shock to the claimed negligent conduct," stated the court. Id., 236.

The courts were right to be concerned about the possibility of fraudulent and fictitious cases based on subjective claims, observed Chief Justice Maltbie. He stated, however, that it would be a "very questiona-

ble position" for a court to assert that "because of the possibility of encouraging fictitious claims compensation should be denied those who have actually suffered serious injury through the negligence of another." Id., 239.

"The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . [T]he test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Id., 237.

Maltbie stated that the court's conclusion was "that where it is proven that negligence proximately caused fright or shock in one who is within the range of ordinary physical danger from that negligence, and this in turn produced injuries such as would be elements of damage had a bodily injury been suffered, the injured party is entitled to recover." Id., 239.

Again addressing the important need to weed out fraudulent and fictitious claims. Maltbie said that triers of fact must use "caution and scrutinize the evidence with care before granting a recovery" and, citing *Howd* v. *MacGregor*, 102 Conn. 331, 128 A. 334, 518 (1925), he stressed that such claims should be found established only upon "clear and satisfactory proof." (Internal quotation marks omitted.) *Orlo* v. *Connecticut Co.*, supra, 128 Conn. 240–41.

The court found the charge to have been erroneous in requiring the plaintiff to prove a contemporaneous physical injury. Id., 240.

In *Urban* v. *Hartford Gas Co.*, supra, 139 Conn. 301, it was alleged that the defendant's employee came to the plaintiff's house to remove the heater that had been purchased under an installment contract. The employee

stated, erroneously, that the plaintiffs had not paid their bills. Mrs. Urban became upset, and claimed that the employee's false remarks had caused an arrested diabetic condition to flare up, leading to a long physical illness. The defendant argued that the law did not permit Urban to recover damages for bodily and mental injuries because the complaint failed to allege that she came within the range of physical danger occasioned by the negligence. Pointing out that the plaintiff did not seek damages for injuries to her nerves and body alone, but for injuries to her nerves and body alleged to have been proximately caused by the negligence involved, the court rejected the defendant's argument.

The court noted that "[t]he wrong perpetrated upon Mrs. Urban was not one which was accompanied by the probability of physical impact. She was the victim of a tort requiring neither physical impact nor danger therefrom." Id., 306. The court continued, "the wrong to Mrs. Urban became actionable when her legal right was invaded by the intentional or negligent violation of duty on the defendant's part and, as stated above, nominal damages should be awarded for that invasion alone." Id. Recovery for outrageous conduct had been permitted in other cases without physical impact, continued the court, citing both *Wilkinson* v. *Downton*, 2 Q.B. 57 (1897), where the defendant, as a practical joke, told the plaintiff that her husband's legs had been broken in an accident, and *Great Atlantic & Pacific Tea Co.* v. *Roch*, 160 Md. 189, 153 A. 22 (1930), where a grocer, thinking himself humorous, sent a customer a dead rat instead of a loaf of bread.

Continuing, the *Urban* court stated: "If the defendant intentionally and unreasonably subjected Mrs. Urban to emotional distress which it should have recognized as likely to result in illness or other bodily harm, the injuries alleged in the complaint are proper ele-

ments of damage if they were proximately caused by the tort of the defendant, although it had no intention of inflicting them. *If it did not intend to cause the emotional distress, the alleged illness and bodily harm are proper elements of damage only if the defendant should have realized that its conduct involved an unreasonble risk of causing the distress and, from the facts known to it, should have realized that the distress, if it were caused, might result in illness or bodily harm.* Restatement, 2 Torts §§ 312, 313. Whether the application of this rule will permit the plaintiff to recover for mental and bodily injury must await trial." (Emphasis added). *Urban v. Hartford Gas Co.,* supra, 139 Conn. 307. The court expressed the view that permitting recovery subject to the narrow limitations stated in its holding would meet the objection that recognizing liability under such circumstances would give rise to "an avalanche of claims." Id.

*Montinieri v. Southern New England Telephone Co.,* supra, 175 Conn. 337, 398 A.2d 1180 (1978), presented the court with an instance in which there was no claim of physical injury, but an allegation of extreme mental distress stemming from a hostage situation. The events outlined in *Montinieri* began in April, 1971, when a convict named Richard Wilson was released from a correctional facility in Attica, New York. Having read about a bank officer's family that had been held hostage in return for a ransom payment, Wilson decided to attempt a similar venture. He learned that among the officers at the South End Bank in Hartford was one Paul Montinieri. Montinieri lived in Wethersfield and had an unlisted telephone number. Wilson learned that a Paul Montineri lived in Bloomfield. Mistakenly thinking that the Bloomfield Montineri was the bank officer, Wilson went to Bloomfield, gained entrance to the Montineri home, and held Mrs. Montineri and her ten year old son hostage. Later in the

day, Mr. Montineri and another son, Joseph, came home. They were able to convince Wilson that he was not at the home of the bank officer for whom he was looking. Wilson then forced Joseph to call the bank. The bank informed Joseph that Paul Montinieri was at home. At gunpoint, Wilson forced Joseph to call the directory assistance operator to obtain Paul Montinieri's home address. The operator refused to disclose that information. By a series of questions, however, Joseph was able to convince the operator to confirm as correct one of two street numbers Joseph suggested.

Wilson then directed the Bloomfield Paul Montineri, at gunpoint, to drive him to the Montinieri house in Wethersfield. There he threatened Mrs. Montinieri with the gun and forced his way into the home. Two of the Montinieri children escaped, however, and called the police. For over an hour, Mr. and Mrs. Montinieri were held hostage by Wilson, in terror, and in constant fear for their personal safety. The police were able to negotiate the release of the Montinieris, and Wilson was captured after being shot. The Montinieris did not seek medical attention and sustained no physical injuries. They did, however, bring suit against the telephone company claiming that the company had wrongfully disclosed their address. The jury returned a verdict for the defendant, from which the Montinieris appealed, claiming that the court had improperly charged the jury by modeling the charge on the language from *Urban.* Rather, the plaintiffs argued, the jury charge should have been based on the principle annunciated in *Orlo,* a principle that would have enlarged the possibility of recovery for them—that they were entitled to recover if they were within the "zone of danger" created by the defendant's conduct.

The court rejected the plaintiffs' argument. Reviewing prior precedents, the court ruled that "there is no logical reason for making a distinction, for purposes

of determining liability, between those cases where the emotional distress results in bodily injury and those cases where it is emotional distress only. . . . The rationale for not insisting that, as a condition precedent to liability, there be an ensuing bodily illness is clearly applicable also to cases where the emotional distress is unintentionally caused." *Montinieri* v. *Southern New England Telephone Co.*, supra, 175 Conn. 344–45.

The court continued: "Accordingly, we hold that recovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact. Nevertheless, we recognize that the protection the law accords to 'the interest in one's peace of mind' . . . must be limited so as not to 'open up a wide vista of litigation in the field of bad manners, where relatively minor annoyances had better be dealt with by instruments of social control other than the law.' . . . The limits set by the trial court in its charge were, in substance, that the defendant would not be liable unless the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm. This charge applied to the present case the same standard of care that is set forth in *Urban* and Restatement (Second), 2 Torts § 313 (1965) for those cases where unintentionally-caused emotional distress results in an ensuing bodily injury. Because recovery for unintentionally-caused emotional distress should not depend on proof of an ensuing bodily injury, that *Urban* and Restatement standard of care also applies to cases, like the present one, where a plaintiff seeks recovery only for unintentionally-caused emotional distress. The trial court's charge, therefore, correctly informed the jury what standard of care the jury was to apply in determining what conduct of the

defendant was a necessary element to establish negligence on the defendant's part." Id., 345–46.

There are numerous other Connecticut Supreme Court decisions discussing claims for negligent infliction of emotional distress. See, e.g., *Kilduff* v. *Adams, Inc.,* 219 Conn. 314, 593 A.2d 478 (1991); *Maloney* v. *Conroy,* 208 Conn. 392, 545 A.2d 1059 (1988); *Buckman* v. *People Express, Inc.,* 205 Conn. 166, 530 A.2d 596 (1987); *Morris* v. *Hartford Courant Co.,* 200 Conn. 676, 513 A.2d 66 (1986); *Bertozzi* v. *McCarthy,* 164 Conn. 463, 323 A.2d 553 (1973); *Strazza* v. *McKittrick,* 146 Conn. 714, 156 A.2d 149 (1959). There are also Superior Court decisions analyzing such claims. See, e.g., *Skirkanich* v. *Waterbury Hospital,* Superior Court, judicial district of Waterbury, Docket No. 100686 (June 15, 1993, 8 C.S.C.R. 694), where, in denying the defendant hospital's summary judgment motion in a negligent infliction of emotional distress action by the plaintiff mother for the defendant's failure to return the body of her stillborn son to her, Judge Pittman surveyed recent Connecticut decisions on this still evolving tort and noted that "the real issue [in these cases] is one of foreseeability, that is, whether the defendant could have foreseen that a breach of any duty it owed to the plaintiff would create the risk of causing distress and that such distress might result in illness or bodily harm."

The allegations made in the present case are distinguishable from the fact patterns presented in *Orlo, Urban,* and *Montinieri,* where the plaintiffs themselves were directly exposed to the conduct of the tortfeasor. These cases and others, however, when read together in concert with general principles of tort law, support the proposition that where there is a duty, and a breach of that duty, and when it is reasonably foreseeable that illness or bodily harm could result, a cause of action

exists notwithstanding the lack of contemporaneous sensory perception of the subject behavior.

When the teachings from the aforementioned cases are distilled, the specific issues before this court become whether the plaintiff parents have adequately alleged that the defendant owed a duty to them, whether the defendant should have realized that his conduct involved an unreasonable risk of causing emotional distress to them; and whether such distress might result in illness or bodily injury to the plaintiffs. The court has found no Connecticut cases directly on point.[2]

Turning first to the issue of duty, the plaintiff's claim is that, by sexually assaulting their minor daughter, the defendant breached a duty owed to them as parents.

The existence of a duty is a question of law. *Nolan v. N.Y., N.H. & H.R. Co.,* 53 Conn. 461, 471, 4 A. 106 (1885). The court must decide whether a plaintiff has properly alleged that a duty was owed. *Shore* v. *Stonington,* 187 Conn. 147, 151, 444 A.2d 1379 (1982). The law does not recognize a "duty in the air." See F. Pollock, Law of Torts (13th Ed. 1929), p. 468. A duty may arise from statute, a contract, or circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm

---

[2] The Supreme Court of Washington rejected a claim by the parents of a minor child for negligent infliction of emotional distress as to themselves in *Schurk* v. *Christensen,* 80 Wash. 2d 652, 497 P.2d 937 (1972), where their minor child was allegedly sexually assaulted by a babysitter. In a persuasive dissent, Associate Justice Finley refuted the majority's arguments and argued to the contrary. This court finds Finley's arguments persuasive, particularly his view that meritorious claims must not be disallowed because of the fear of hypothetical fraudulent ones, and his insistence that the difficulty of determining damages with scientific precision does not provide a principled basis for prohibiting damages altogether where provided. Id., 658–68. *Schurk* was decided twenty-two years ago, prior to the development of widespread public awareness about sexual abuse of children in society and prior to increased understanding about the links between psychic injury and physical illness.

was likely to result from his act or failure to act. *Coburn v. Lenox Homes, Inc.,* 186 Conn. 370, 441 A.2d 620 (1982).

Determining whether a duty exists in particular circumstances, and whether that duty extends to a particular plaintiff, is a question far more easily asked than answered.[3] As Prosser has noted: "The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated. It is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . But it should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." W. Prosser, Torts (4th Ed. 1971) § 53, pp. 325–26.

The previously cited cases make it clear; see, e.g., *Urban v. Hartford Gas Co.,* supra, 139 Conn. 304; *Skirkanich v. Waterbury Hospital,* supra, 8 C.S.C.R. 694; that a contract may give rise to an implied duty "to use reasonable care to refrain from interfering or threatening to interfere" with rights created by the contract.

---

[3] For a provocative discussion of the difficulties encountered in attempting to determine the source of "duties" see L. Green, "The Duty Problem in Negligence Cases," 28 Columbia L. Rev. 1014, 1026 (1928), where the author asks: "How can a judge say there was a duty in this case and not in that one? This is the first problem in any case. In the 'mine run' of cases it may not be so very difficult because other more or less similar cases have blazed trails. But how did it happen that the trails were so blazed? The countless varieties of conduct make this problem constantly fresh. Let it be said again that this is the dimmest part of tort law, perhaps of all law. It presents the hardest problems in any field. It is the most important; it is the one at which judges quail; it is the one which is most frequently hidden in a mysticism of words."

Here, the plaintiffs have adequately pleaded the existence of a duty and the breach of that duty by alleging that they entrusted the defendant with the minor plaintiff, who was a guest in the defendant's home. From a legal perspective, the relationship between parent and child is of such significance as to be constitutionally protected. *Doe* v. *Catholic Family Services, Inc.,* 36 Conn. Sup. 93, 95, 412 A.2d 714 (1979). From a practical standpoint, "no one can seriously question that fear or grief for one's child is as likely to cause physical injury as concern over one's own well-being." *Dillon* v. *Legg,* supra, 68 Cal.2d 736.

As noted, duty can be an outgrowth of an agreement between parties, often expressed in the form of a written contract. Under the circumstances of the present case, even in the absence of an express understanding between the parties, a contract implied in law, sometimes called a quasi-contract or a constructive contract, can be understood to have existed, with a condition being that one entrusted with the care of a child will not assault the child. See generally, J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 1-12 ("[a] contract implied in law is not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended"); 17A Am. Jur. 2d, Contracts § 12 ("an implied contract is one inferred from the conduct of the parties, though not expressed in words . . . in an implied contract some one or more of the terms and conditions are implied from the conduct of the parties"); 66 Am. Jur. 2d, Restitution and Implied Contracts § 2. There are certain legal duties which, "though of a contractual nature, are not based on consent. These are sometimes spoken of as contracts implied in law, but are more properly called quasi-contracts or constructive contracts. . . . In the case of such contracts, the promise is purely fictitious and is implied in order to fit the actual cause of action to

the remedy. The liability exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention." Id.; see also *Brighenti* v. *New Britain Shirt Corp.*, 167 Conn. 403, 406–407, 356 A.2d 181 (1974). "An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and the conduct of the parties. . . . In distinction to an implied contract, a quasi contract is not a contract, but an obligation which the law creates out of the circumstances present, even though a party did not assume the obligation, and may not have intended but in fact actually dissented from it." (Citations omitted.) *Brighenti* v. *New Britain Shirt Corp.*, supra, 406–407. Ultimately, regardless of whether resort is made to contractual theories, the court's determination as to whether a duty exists must be based on an evaluation of society's present reasonable expectations. Irrespective of what the precise source of the obligation may be said to be, and how it may be legally characterized, it is the court's view that one to whom a minor child has been entrusted has assumed a duty to that minor's parents not to assault the child sexually.

Whether the defendant knew or should have realized that his conduct involved an unreasonable risk of causing distress to the plaintiffs, and whether the defendant should have realized that such distress, if caused, might result in illness or bodily harm to the plaintiffs, as alleged in the complaint, are factual issues to be determined by the jury.

The court is sensitive to the concern, expressed by commentators and the Supreme Court, that expansion of claims for negligent infliction of emotional distress not result in an "avalanche" of specious claims by remote litigants alleging evanescent and speculative harms occurring in the distant past. That, however, is manifestly not what is presented in the present case as alleged by the plaintiffs. There is nothing metaphysi-

cal about the damages the plaintiffs claim to have suffered. As long as the law provides that every invasion of a legal right imports damage; see *Urban* v. *Hartford Gas Co.*, supra, 139 Conn. 305; the possibility of false claims should not prevent litigants from asserting legitimate ones in good faith. See also Conn. Const., art. I, § 10. Since the time of the court's ruling in *Orlo* v. *Connecticut Co.*, supra, 128 Conn. 231, in 1941, it has been recognized that the tort of infliction of emotional distress has been evolving. It can be expected to continue to evolve as medical science advances and the delicate interplay between the mind and the body is further explored and understood.

Numerous tools exist to weed out false and inflated claims, including motions for summary judgment and carefully instructing the jury to apply caution when evaluating such claims, as suggested by Chief Justice Maltbie in *Orlo*. For a general discussion, see C. Magruder, "Mental and Emotional Disturbance in the Law of Torts," 49 Harv. L. Rev. 1033 (1936). Recalling Holmes' famous dictum that "[t]he life of the law has not been logic; it has been experience" is helpful. "The law," he wrote, "embodies the story of a nation's development through many centuries, and it cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics." O. Holmes, The Common Law (1881 Ed.), p. 1. Ultimately, the jury system must be trusted to embody and express the community's collective sensibilities by making difficult liability and damage determinations in this realm, as it does in so many others. See, e.g., *Orlo* v. *Connecticut Co.*, supra, 128 Conn. 236. And courts and jurors must be trusted case by case to define incrementally the contours of the law in this area, over time. Difficult and perplexing distinctions will have to be made, and lines will have to be drawn. That, however, is precisely the business of the judicial system, acting within a matur-

ing society where collective sensibilities constantly evolve, leading the law to evolve constantly as well. *Burns* v. *Board of Education,* 228 Conn. 640, 647, 638 A.2d 1 (1994).

The court views this ruling as strictly limited to the facts presented in the pleadings, involving the closest and most precious of relationships, parent to child, and one of the most serious types of allegation of harm—intentional sexual assault of a minor by one to whom the minor was entrusted. It further views the cause of action asserted in the tenth count as the logical and natural outgrowth of legal principles well recognized in Connecticut and elsewhere for over one half of a century. Whatever may be said about claims brought in future cases, the court is persuaded that society is prepared to recognize that the duty claimed in the present case ought to exist.

For these reasons, and for the reasons previously stated, the motion to strike is denied.